ORDERED.

Dated:  March 30, 2018

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

The Health Support Network, Inc.,

     Debtor.

_____/

Case No. 8:15-bk-10966-MGW
Chapter 7

**MEMORANDUM OPINION AND ORDER ON
ENTITLEMENT TO CONTINGENCY FEE AWARD**

The Jennis & Bowen law firm agreed to represent the Chapter 7 Trustee on a contingency basis. Before the contingency occurred, the firm's two partners decided to practice separately. So they dissolved the firm. The Trustee decided to follow one of the partners (Dave Jennis) and his new firm (the Jennis Law Firm). Because Jennis left Jennis & Bowen before the contingency occurred and the Trustee followed him, then Jennis & Bowen is entitled to the entire contingency fee, less Jennis' partnership share.

## Background

In May 2016, the Chapter 7 Trustee retained the Jennis & Bowen law firm, along with two other firms, as special litigation counsel to pursue potential claims against the Debtor's former officers, directors, and employees.[1] Under the retention orders, the three firms were collectively entitled to a 45% contingency fee.[2] Three months later, Jennis & Bowen advised the Trustee that the firm would be dissolving because the shareholders—Dave Jennis and Chad Bowen—had decided to practice separately.[3]

In the notice advising the Trustee of Jennis & Bowen's impending dissolution, the firm explained that the decision as to who would represent the Trustee going forward was hers.[4] The same day that the Trustee received the notice, she elected to have Dave Jennis and his new law firm (the Jennis Law Firm) continue representing her as special litigation counsel in this case.[5]

Around the same time, a proceeding was filed to formally dissolve Jennis & Bowen. Robert Williams was appointed as receiver to wind down the firm's business. The Receiver and the Jennis Law Firm eventually filed a joint motion to substitute the Jennis Law Firm for Jennis & Bowen as special counsel to the Trustee

---

[1] Doc. Nos. 64, 67, 83, 84, 85 & 184.

[2] Doc. Nos. 83 & 84.

[3] Doc. No. 242 at ¶ 6; Doc. No. 247, Ex. A.

[4] Doc. No. 242 at ¶ 6; Doc. No. 247, Ex. A.

[5] Doc. No. 247, Ex. A.

in this case.[6] As of August 22, 2016, the Jennis Law Firm officially took over as special litigation counsel in this case under the same terms as Jennis & Bowen.[7]

Ten months later, the Trustee compromised her claims against the Debtor's former officers, directors, and employees for $1.7 million. The settlement generated a $680,000 contingency fee, which was to be allocated among the three firms representing the Trustee. The Jennis Law Firm and the Receiver for Jennis & Bowen filed a joint fee application seeking nearly $265,000 in fees and costs as their share of the $680,000 contingency fee.[8]

The Court approved the $265,000 in fees but reserved jurisdiction to determine how the fees should be allocated between Jennis & Bowen and the Jennis Law Firm. Relying on the Florida Supreme Court's 1994 decision in *Faro v. Romani*,[9] the Jennis Law Firm argues it is entitled to the entire contingency fee. The Receiver takes the contrary view, relying on the Third District Court of Appeals' 1964 decision in *Frates v. Nichols*,[10] which was later adopted by the Eleventh Circuit.[11] To determine how to properly allocate the contingency fee here, the Court must decide whether *Faro* or *Frates* governs.

---

[6] Doc. No. 154.

[7] Doc. No. 184.

[8] Doc. No. 193.

[9] 641 So. 2d 69 (Fla. 1994).

[10] 167 So. 2d 77 (Fla. 3d DCA 1964).

[11] *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657 (11th Cir. 2013).

## Conclusions of Law

*Faro v. Romani*, relied on by the Jennis Law Firm, deals with a law firm's

entitlement to a contingency fee when the firm withdraws before the contingency

occurs.[12] In *Faro*, John Faro hired Robert Romani to represent him in a claim against

Amica Mutual Insurance Company.[13] Faro agreed to pay Romani a contingency fee.

Before trial, Romani withdrew because of irreconcilable differences.[14] Faro retained

new counsel and then settled his claim for $750,000. Although Romani withdrew

before Faro agreed to the settlement, he still sought to impose a charging lien against

the settlement proceeds for the full contingency fee.[15]

The Florida Supreme Court held that when an attorney withdraws on his own

volition before the contingency has occurred, then he forfeits all rights to

compensation.[16] The Florida Supreme Court envisioned only two scenarios where a

lawyer who withdraws before a contingency occurs would be entitled to

compensation: If the client's conduct would (1) make the attorney's continued

performance legally impossible; or (2) cause the attorney to violate an ethical rule.[17]

---

[12] 641 So. 2d at 70.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 71.

[17] *Id.*

In *In re Naturally Beautiful Nails*, Judge Paskay followed *Faro*.[18] In *Naturally Beautiful Nails*, a law firm agreed to represent a plaintiff in a case against Wal-Mart on a contingency basis.[19] The firm later withdrew after it was acquired by another firm that had previously done work for Wal-Mart, creating a conflict under Rule 4-1.16(a)(1) of the Rules Regulating the Florida Bar.[20] Because there was no real argument that withdrawal in that case was anything other than voluntary, Judge Paskay, following *Faro*, ruled that the firm was not entitled to a share of a contingency fee earned after it withdrew.[21]

*Frates v. Nichols*, relied on by Jennis & Bowen's Receiver, deals with a different situation: a law firm's entitlement to a contingency fee when one of its partners leaves and takes a client with him.[22] In *Frates*, a lawyer (Frates) left his old firm and started a new one, taking ten negligence cases with him. When he was at his old firm, Frates had been handling those negligence cases on a contingency basis. Eight of the ten cases resulted in fees after Frates left his old firm. The issue in *Frates* was whether the old firm was entitled to the contingency fees for those eight cases.

---

[18] 2004 WL 2931367 (Bankr. M.D. Fla. Oct. 13, 2004).

[19] *Id.* at *1.

[20] *Id.*

[21] *Id.* at *2.

[22] 167 So. 2d 77 (Fla. 3d DCA 1964).

As a starting point, the Third DCA determined that when a client retains a law firm, every member of the firm is obligated to make sure the firm fulfills its contractual obligation:

> We adopt the rule recognized by our sister states that the retention of a law firm obligates every member thereof to fulfilling that contract, and that upon dissolution any of the partners is obligated to complete that obligation without extra compensation.[23]

A corollary to that rule is that the unfinished contingency fee cases in *Frates* were assets of the old firm.[24] The Third DCA also observed that that just because the firm had dissolved didn't mean the partnership came to an end—it continued for the purpose of winding up its affairs.[25]

So the Third DCA determined that Frates was obligated to finish the contingency cases as part of his obligation to wind up the old firm's business.[26] But the Third DCA also determined that just because Frates wasn't entitled to extra compensation, that didn't mean he wasn't entitled to compensation at all.[27] The Third DCA held that Frates was entitled to his partnership share of the net contingency fees.[28]

---

[23] *Id.* at 81.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 81 – 82.

[27] *Id.* at 82.

[28] *Id.*

Fifteen years ago, in *Buckley Towers Condominium, Inc. v. Katzman Garfinkel Rosenbaum*, the Eleventh Circuit applied *Frates* to determine the allocation of a contingency fee among three firms.[29] As the Eleventh Circuit put it, *Buckley Towers* presented a "*Frates* within *Frates*" problem.[30] In *Buckley Towers,* the owner of a condominium development (Buckley Towners Condominium, Inc.) hired the Becker & Poliakoff law firm on a contingency fee basis to pursue a hurricane damage claim against the condominium's insurer.[31] Daniel Rosenbaum, a Becker & Poliakoff shareholder, was the lead attorney.[32] Buckley Towers followed Rosenbaum as he switched firms two times, which each successive firm agreeing to take the case on contingency.[33]

By the time Buckley Towers initially obtained a final judgment against its insurer, Rosenbaum had switched to the Katzman Garfinkel & Rosenbaum law firm.[34] During an appeal of the final judgment, Rosenbaum switched to Rosenbaum Mollengarden Janssen & Siracusa.[35] The procedural posture of the case gets complicated once the case went up on appeal. But suffice it to say, on remand the

---

[29] *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657 (11th Cir. 2013).

[30] *Id.* at 664.

[31] *Id.* at 659.

[32] *Id.*

[33] *Id.* at 659 – 60.

[34] *Id.*

[35] *Id.* at 660.

trial court entered a partial amended final judgment in the approximate amount of $12 million.[36] Then Buckley Towers' insurer issued two checks totaling the amount of the partial amended final judgment.[37] At the time the insurer paid the $12 million judgment, Buckley Towers was represented by the Rosenbaum Mollengarden firm.[38]

Not surprisingly, all three firms imposed charging liens on the settlement proceeds. The magistrate judge issued a report and recommendation, later adopted by the district judge, recommending that the contingency fee belonged to the firm representing the client at the time the contingency occurred: the Rosenbaum Mollengarden firm. On appeal, the Eleventh Circuit, following *Frates*, explained that the right to a contingency fee in that situation depends on the relationship between the initial firm and the successor firm:

> When there is no connection between the two firms, the initial firm is entitled to a quantum meruit award, limited by any agreement to a maximum fee award. . . . However, when a partner exits the initial firm and the client follows, the initial firm is entitled to the entire contingency fee, less the former partner's partnership share.[39]

The Eleventh Circuit's application of *Frates* in *Buckley Towers* is significant in two respects. First, the law firm involved in *Frates* was a limited partnership, and the case was decided, at least in part, based on the Uniform Partnership Act. *Buckley*

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 661.

*Towers*, however, extended the *Frates* rationale to a professional association. Second, *Frates* involved the dissolution of the initial law firm. *Buckley Towers*, however, extended the *Frates* rationale to a case involving disassociation rather than dissolution. This second point may be the most significant.

As Dean Donald J. Weidner explained, extension of *Frates* to the dissociation context shifted the rationale underlying *Frates*:

> In shifting the focus from dissolution to dissociation,
> *Buckley Towers* shifted the focus from the fiduciary duty to
> wind up for the benefit of the firm to a general fiduciary
> duty to account for a benefit received from the use of a
> partnership property or opportunity.[40]

Under *Buckley Towers*, a partner who leaves a firm and takes a client with him must account to the partnership for income generated from partnership property (i.e., the contingency fee case).[41]

This case squarely falls within *Frates* and *Buckley Towers*. There's no real dispute that Jennis & Bowen's partners decided to practice separately; each lawyer left the firm; the client (the Trustee) elected to follow Dave Jennis and his new law firm. *Faro* only applies where there is no connection between the initial firm and the successor firm. Here, there is an obvious connection between the initial firm and successor firm.

---

[40] Donald J. Weidner, *Leaving Law Firms with Client Fees: Florida's Path*, Fla. B. J., Dec. 2017, at 8.

[41] *Buckley Towers*, 519 F. App'x at 662.

The Jennis Law Firm attempts to distinguish this case from *Frates* and *Buckley Towers* on three grounds. First, it says Jennis & Bowen withdrew from the representation before the contingency occurred, taking it outside *Frates* or *Buckley Towers*. Second, it says neither *Frates* nor *Buckley Towers* involved a dissolution. Third, it says the "winding up" rationale from *Frates* doesn't apply here because the Jennis & Bowen Receiver is doing the winding up—not the Jennis Law Firm. The Jennis Law Firm is wrong on each count.

For starters, this is not a classic "withdrawal" case. After all, typical "withdrawals" are not accompanied by a notice advising a client that she has to choose who to continue to represent her going forward. That occurs where an attorney leaves a firm (i.e., a dissociation), which is what happened here. The only reason there was a "withdrawal" was because the partners decided to leave the firm, and as a consequence, the firm dissolved. If this case falls within *Faro* simply because there was a motion to withdraw at some point, then every case where a partner leaves a firm and the client follows (i.e., the paradigmatic *Frates* situation) will fall within *Faro* because every case where a partner leaves will necessarily involve a withdrawal motion. How else will the leaving partner's new firm take over representation? To find that this case falls within *Faro*, the Court would have to completely ignore what actually happened.

Moreover, contrary to the Jennis Law Firm's claim, *Frates* did involve dissolution. In fact, *Frates* specifically discusses the effect of dissolution. According to

the *Frates* court, "the *dissolution* date of February 28, 1961, did not put an immediate end to the partnership."[42] That is where the "winding up of the partnership" rationale underlying *Frates* comes from. If there hadn't been a dissolution in *Frates*, there would have been no need to talk about the "winding up" of a partnership.

Finally, the fact that a Receiver has been appointed to "wind up" Jennis & Bowen's affairs doesn't warrant a different outcome. For one thing, implicit in the argument that the Receiver was the one charged with winding up the partnership affairs is the notion that that the Receiver could have taken over the representation.[43] That plainly is not the case, as evidenced by the notice the firm gave the Trustee. In any event, *Buckley Towers* also offers an additional rationale for the rule first announced in *Frates*: a partner leaving a firm has a fiduciary duty to account for fees from ongoing client transactions.[44] So it is immaterial to the Court's ruling that the Receiver has been charged with winding up Jennis & Bowen's affairs.

The Jennis Law Firm has one fallback argument if the Court follows *Frates*: Even if Jennis & Bowen is entitled to the contingency fee, the Jennis Law Firm's recovery is not limited to Jennis' partnership share of the contingency fee. The Jennis Law Firm says *Buckley Towers* stands for the proposition that the firm is also entitled to a quantum meruit award. The Jennis Law Firm misreads *Buckley Towers*.

---

[42] *Frates v. Nichols*, 167 So. 2d 77, 80 (Fla. 3d DCA 1964).

[43] Doc. No. 242 (arguing that the "Receiver, a licensed and highly regarded attorney (with a cadre of bankruptcy lawyers at his disposal) did not attempt to continue the representation").

[44] *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 662 (11th Cir. 2013).

In *Buckley Towers*, the Eleventh Circuit did hold that the second firm to represent Buckley Towers—Katzman Garfkinkel—was entitled to a quantum meruit award. That was because none of the lawyers at that firm (other than Rosenbaum) owed a fiduciary duty to complete the contingency matter since they had not previously represented Buckley Towers. This case is distinguishable from *Buckley Towers* in that one narrow respect: The other lawyers at the Jennis Law Firm did owe a fiduciary duty to the Trustee since they had previously worked at Jennis & Bowen when the firm represented the Trustee.

### Conclusion

Here, there is a connection between Jennis & Bowen (the firm that originally represented the Trustee) and the Jennis Law Firm (the Trustee's successor counsel). For that reason, Jennis & Bowen is entitled to the entire contingency fee, less Jennis' partnership share. Accordingly, it is

**ORDERED**:

1.    The Jennis Law Firm's motion to allocate contingency fee is DENIED.

2.    Jennis & Bowen is entitled to the entire contingency fee less Dave Jennis' partnership share.

---

Attorney Ed Whitson is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of this Order.

**Edmund S. Whitson, Esq.**
  **Burr & Forman, LLP**
*Counsel for the Jennis & Bowen Receiver, Robert V. Williams*

**David S. Jennis, Esq.**
**Eric D. Jacobs, Esq.**
  **Jennis Law Firm, P.A.**
*Counsel for the Jennis Law Firm*