UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)
www.flmb.uscourts.gov

In re:
                                                        CASE NO. 8:15-BK-10966-MGW

THE HEALTH SUPPORT NETWORK,              CHAPTER 7
INC.,
        Debtor.

_____/

In re:
                                                        CASE NO. 8:15-BK-10969-MGW

                                                        CHAPTER 7

BRIDES AGAINST BREAST CANCER,
LLC,
        Debtor.

_____/

## MOTION OF TRUSTEE: (i) TO APPROVE SETTLEMENT AND COMPROMISE OF CONTROVERSY WITH KERKERING, BARBERIO & CO. AND FOR AUTHORIZATION: AND (ii) TO APPROVE AND PAY 35% CONTINGENCY FEE TO THE TRUSTEE'S SPECIAL LITIGATION COUNSEL[1]

---

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

      Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within **twenty-one (21) days** from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.   If you object to the relief requested in this paper, you must file your response with the **Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Fifth Floor, Suite 555, Tampa, Florida 33602**, and serve a copy on the movant's attorney, **David C. Cimo, Esq., Cimo Mazer Mark PLLC, 100 SE 2nd Street, Suite 3650, Miami, FL 33131**, **David S. Jennis, Jennis Law Firm, 606 East Madison Street, Tampa, Florida 33602** and any other appropriate persons within the time allowed.

      If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or may consider the response and grant or deny the relief requested without a hearing.   If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

[1]  If the settlement that is the subject of this Motion is approved, the Trustee proposes to allocate $3,000.00 of the gross proceeds to the estate of Debtor Brides Against Breast Cancer, LLC based upon her expectation that the allocation of such amount will result in the unsecured creditors of that estate receiving substantial distributions, while creditors of the estate of Debtor Health Support Network, Inc. will receive significantly less on a percentage basis.
{00322855.DOCX;6}

Beth Ann Scharrer, Successor Trustee (the "Trustee") of and for the bankruptcy estates of the above-captioned Debtors (the "Debtors" or "HSN"), pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. §105, files this Motion: (i) to Approve Settlement and Compromise between the Trustee and Kerkering, Barberio & Co. ("Kerkering"); and (ii) to Approve and Pay 35% Contingency Fee to the Trustee's Special Litigation Counsel (the "Motion"), and says:

### Facts Supporting Relief Requested

1.      On October 30, 2015 (the "Petition Date"), the Debtors filed voluntary Chapter 7 petitions under Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court").

2.      The Trustee is the duly appointed and acting fiduciary of the bankruptcy estates of the Debtors, with the sole and full power, authority, and standing to prosecute, compromise, or otherwise resolve, among other things, all claims against Kerkering for and on behalf of estates of the Debtors

3.      The Trustee and her counsel independently conducted an investigation into, *inter alia,* potential claims against Kerkering involving alleged professional negligence (the "Kerkering Claims") and the avoidance and recovery of certain alleged avoidable transfers against Kerkering (the "Chapter 5 Claims")

4.      The Parties agreed, and the Bankruptcy Court ordered the Parties, to mediate the Kerkering Claims and Chapter 5 Claims in Tampa, Florida.

5.      On November 28, 2018, the Trustee and Kerkering participated in the mediation conference in connection with the Kerkering Claims and the Chapter 5 Claims (the "Mediation"), and continued settlement discussions thereafter.

6.      The Trustee and Kerkering reached a settlement relating to the Kerkering Claims, the Chapter 5 Claims, and any and all other claims the Trustee has authority to pursue against

Kerkering, with such settlement being subject to Bankruptcy Court approval pursuant to Federal Rule of Bankruptcy Procedure 9019 ("FRBP 9019").

**The Settlement**

7. As a result of the Parties' efforts, and without Kerkering admitting any fault or liability whatsoever to the Trustee, and to avoid the potential costs and uncertainties attendant to litigation, expressed their respective desire to settle the Kerkering Claims and the Chapter 5 Claims amicably and, to this end, entered into a stipulation of settlement (the "Settlement Agreement") memorializing the settlement (the "Settlement") reached between and among the Parties, a copy of which is attached as Exhibit A to this Motion.   The material terms of the Settlement Agreement provide, *inter alia*, as follows[2]:

- As full and final settlement of the Kerkering Claims, Kerkering shall cause $195,000.00 to be paid to the Trustee ("Settlement Payment").

- In exchange for the full and final settlement of the Chapter 5 Claims, Kerkering is contributing towards the Settlement Payment, and effective upon entry of the Final Settlement Order (as the term is defined below), Kerkering shall be deemed to waive any claims it may have against the bankruptcy estate, the Debtors, and and/or the Trustee.

- The Settlement Agreement is subject to and conditioned upon the entry of an order by the Bankruptcy Court approving the Settlement Agreement and same becoming final and non-appeal (the "Final Settlement Order").

- The mutual releases of claims between and among the Trustee, Kerkering, and its professional liability insurance carrier in a form mutually acceptable to the Parties.

---

[2] Unless otherwise noted, all capitalized terms herein shall have the meaning as ascribed to them in the Settlement Agreement

8.      This Motion and the notice of hearing thereon are being noticed to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 9019.

## Request for Approval of Settlement

9.      Bankruptcy Rule 9019 (a) provides that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

10.     Rule 9019(a) gives the Court broad authority in approving compromises or settlements.  *In re Bioastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (*citing In re Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987)). The determination of whether to approve a compromise is a matter committed to the sound discretion of the bankruptcy judge.  *River City v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-603 (5th Cir. 1980).   In exercising this discretion, the court should approve the proposed settlement if it is in the best interests of the estate.  *Id*.

11.     The applicable test for approving a settlement is whether the compromise falls below the lowest point in the range of reasonableness. *See In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988); *In re Martin*, 91 F.3d 389 (3d Cir. 1996); *In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2d Cir. 1985); *In re W.T. Grant Company*, 699 F.2d 599, 608 (2d Cir. 1983).

12.     The Eleventh Circuit provides that when a bankruptcy court decides whether to approve or disapprove a settlement, it must consider:

- The probability of success in the litigation;

- The difficulties, if any, to be encountered in the matter of collection;

- The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

- The paramount interest of the creditors and a proper deference to their reasonable view in the premises.

*In re Justice Oaks II, Ltd,* 898 F.2d 1544 (11th Cir. 1990).

13.     Applying the above legal authorities to the instant case, the Trustee believes that the proposed Settlement should be approved, as it is fair, reasonable, in the best interests of the estates and their creditors, and otherwise satisfies each of the applicable factors and legal principles governing the approval of settlements.

**A.  <u>The Probability of Success in the Litigation</u>**

14.     When weighing the success of the Settlement Agreement against the probability of success if the Kerkering Claims and the Chapter 5 Claims were commenced or otherwise litigated by the Trustee against Kerkering, it is clear that payment of the Settlement Amount pursuant to the Settlement Agreement will avoid the difficulty and expenses the Trustee would incur if the Kerkering Claims were required to be litigated.   Kerkering has advised of its intention to assert and prosecute significant defenses to the claims, and has denied any and all liability to the bankruptcy estates whatsoever. While the Trustee believes her claims against Kerkering are meritorious and the defenses and denials could be overcome, she recognizes that the risks associated with litigation, and the possibility of an adverse judgment, no matter how remote, could materially impact, and could substantially delay, the Trustee's efforts to make a material distribution to creditors of the estates. Moreover, had litigation been commenced or otherwise continued, a summary judgment in favor of any Party would likely have been remote based upon significant material facts claimed to be in dispute, thereby requiring that the matter be resolved by and through trials to be conducted by this Court and/or the District Court based upon jury trial demands.

**B.  The Difficulties, if Any, to Be Encountered in the Matter of Collection**

15.     If the Settlement Agreement is not approved, the Trustee anticipates significant difficulty in the matter of collection, in addition to the litigation risks described in paragraph 14 above. Kerkering is a professional services corporation and the Trustee could face significant challenges in collecting on any judgment that may be ultimately obtained.   By way of example only, if an adverse judgment was obtained against Kerkering, the individual professionals who generate revenue would be free to leave or practice with an alternative entity.   Moreover, while Kerkering is insured in respect of professional liability claims, the insurance policy is a wasting limits policy, which means defense costs are deducted dollar-for-dollar.   Therefore, if the Trustee were required to file suit, there could be a risk that no policy proceeds would be remaining after payment of defense costs associated with a protracted jury trial and resolution of all appeals.

**C.  The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

16.     The filing and initiation of a lawsuit followed by continued litigation would involve significant expense, delays, and inconvenience to the Parties.   The underlying issues are complex and would be expensive to pursue because they would require, among other tasks, substantial expert witness testimony at trial at great expense to the estates.   In addition, the facts and circumstances that form the basis for the Trustee's claims against Kerkering are extensive and would require, among other things, testimony from many fact witnesses. The Trustee believes that litigation against Kerkering would be very costly for the estates because of, among other things, the large number of witnesses that would be required to testify at trial and the expense of expert witnesses.

**D. The Paramount Interest of Creditors with Proper Deference to Their Reasonable Views**

17.     Lastly, the Settlement reached at the mediation conference and memorialized in the Settlement Agreement is in the best interests of the estates and their creditors.   As stated above, the filing and initiation of a lawsuit and the continuation of pending litigation would be costly and uncertain. The Trustee believes that the expense, inconvenience, and delay that would be necessitated by proceeding against Kerkering would be adverse to the best interests of the creditors, particularly in light of the facts of the case, the amount at issue, and the Settlement reached with Kerkering. Therefore, it is the position of the Trustee and her counsel that, based on careful evaluation, the Settlement is in the best interests of the bankruptcy estates and their creditors.

**Request to Approve and Authorize
Payment of Earned Contingency Fee**

18.     By Order dated November 19, 2017 (Doc. No. 231), this Court approved modification of the employment terms of special litigation counsel Genovese, Joblove & Battista, P.A., as special litigation counsel ("GJB"), and general counsel David Jennis, P.A. d/b/a the Jennis Law Firm ("JLF") to jointly prosecute professional liability claims on a 35% contingency fee, with 75% to be allocated to GJB and 25% to JLF.   Thereafter, by Order dated April 20, 2018 (Doc. No. 290), Cimo Mazer Mark, PLLC ("CMM") was approved as special litigation counsel, replacing GJB, under the same terms that GJB had been employed.

19.     If the Settlement Agreement is approved, CMM, GJB, JLF, and the Trustee request that the Court approve and authorize payment of the earned 35% contingency fee totaling **$68,250.00** to be paid to such law firms from the gross proceeds of the Settlement, with $**51,187.50** to be paid collectively to CMM and GJB to be allocated by separate order of the Court without

further motion, and **$17,062.50** to be allocated to JLF, which sum may be paid forthwith to JLF after the Trustee's receipt of the gross proceeds of the Settlement.

WHEREFORE, the Trustee requests the entry of an Order (i) authorizing and approving the terms of the Settlement Agreement; (ii) authorizing the approval and payment of the **$68,250.00** contingency fee award to CMM, GJB, and JLF to be allocated as provided in paragraph 19 above and paid in accordance with the previously entered retention orders of this Court; (iii) authorizing the Trustee to take such actions as may be necessary and appropriate to implement the terms of the Settlement Agreement; and (iv) granting any other relief the Court deems appropriate.

Submitted this 28th day of May 2019.

JENNIS LAW FIRM
*Attorneys for the Trustee*
606 E. Madison Street
Tampa, Florida 33602
Tel: (813) 229-2800

By: */s/ David S. Jennis*
      David S. Jennis, Esq.
      Fla. Bar. No. 7755940
      Email: djennis@jennislaw.com


    -and-


CIMO MAZER MARK PLLC
*Special Litigation*
*Counsel for the Trustee*
100 S.E. Second Street, Suite 3650
Miami, FL 33131
Tel: (305) 374-6480
Fax: (305) 374-6488

By: */s/ David C. Cimo*
      David C. Cimo, Esq.
      Fla. Bar. No. 775400
      Email: dcimo@cmmlawgroup.com

{00322855.DOCX;6}

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF, and/or first-class postage-prepaid U.S. Mail to the parties listed on the attached **Claimant Mailing Matrix, pursuant to Local Rule 2002-1(c)** on this 28th day of May 2019.


By:____/s/ *David S. Jennis*_____
        David S. Jennis

Label Matrix for local noticing
113A-8
Case 8:15-bk-10966-MGW
Middle District of Florida
Tampa
Tue May 28 14:55:57 EDT 2019

American InfoSource LP as agent for
Verizon
PO Box 248838
Oklahoma City, OK  73124-8838

Aqua Plumbing Services, Inc.
8283 Vico Court
Sarasota, FL 34240-7844

BMO Harris Bank, N.A.
c/o Thomas H. Dart, Esq.
1515 Ringling Blvd., #700
Sarasota, FL 34236-6720

Burton Skip Sack
415 L'Ambiance Drive, PH-D
Longboat Key, Florida 34228-3916

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Carl Ritter
c/o Mark D. Hildreth, Esq.
Shumaker Loop & Kendrick, LLP
Post Office Box 49948
Sarasota, FL 34230-6948

Chloe and Isabel
140 Drayton Circle
Brunswick, GA 31525-4855

Deborah Massingale
8574 Bush River Road
Newberry, SC 29108-8959

Florida Power and Light
General Mail Facility
Miami, FL 33188-0001

It Works
424 Whitewing Circle
Minneola, FL 34715-9239

Jani King Cleaners
2469 Sunset Point Rd.
Clearwater, FL 33765-1526

Kaysha Weiner Photography
1856 Pomona Avenue, Unit 2B
Costa Mesa, CA 92627-9510

Kerkering Barberio & Co.
1990 Main St.
Sarasota, FL 34236-8000

Lisa Schmit
121 6th St SW
Delano, MN 55328-8273

Mary Kay
11996 Conway St
Spring Hill, FL 34609-9155

Mary Kay
5354 Canvasback Rd
Baines, WA 98230-6302

Michael's on East - Catering & Ballroom
1259 S. Tamiami Trail, #1259B
Sarasota, FL 34239-2219

Origami Owl
22786 W. Cocopah St
Buckeye, AZ 85326-7102

Palm Printing
6001-A Business Blvd.
Sarasota, FL 34240-8410

Penske Truck Leasing Co, L.P.
Penske Truck Leasing Co., L.P.
PO Box 563
Reading, PA 19603-0563

Pitney Bowes Global Financial Services
Pitney Bowes Inc
27 Waterview Drive
Shelton, CT 06484-4361

Renee VanPatten Photography
34  Lakeshore  Dr . Apt. 2C
Watervliet, NY 12189-2908

Sarasota County Tax Collector
101 S. Washington Blvd.
Sarasota, FL 34236-6993

Stan Heinz
6727 63rd Terrace E.
Bradenton, FL 34203-8043

Touch of Southern Weddings & Events
190 E Plantation Circle
Reidville, NC 27320-8359

U.S. Bank Equipment Finance
1310 Madrid St.
Marshall, MN 56258-4099

Ward Group PR, Inc.
2962 Trustee Avenue
Sarasota, FL 34243-2549

End of Label Matrix
Mailable recipients    27
Bypassed recipients     0
Total                  27

Label Matrix for local noticing
113A-8
Case 8:15-bk-10969-MGW
Middle District of Florida
Tampa
Tue May 28 14:59:59 EDT 2019

Animus-Art Photography
202 Pearl St., Apt 2
Summerville, MA 02145-3918

Bentley & Bruning, P.A.
783 S. Orange Ave., #220
Sarasota, FL 34236-4702

Black Pearl Escape
4915 Devane Court
High Point, NC 27265-8202

Brett Kelly
Just Picture It
117 Merrifield Dr.
Greenville, SC 29615-3340

Destinations HD
11516 W 109th Street
Overland Park, KS 66210-1236

Eternal Knot Weddings
14127 81st Pl NE
Kirkland, WA 98034-5077

It Works
405 5th ave SW
Childersburg, AL 35044-1907

It Works
424 Whitewing Circle
Minneloa, FL 34715-9239

It Works
820 Marshall Lane
Sanders, KY 41083-9775

Jani King Cleaners
2469 Sunset Point Rd.
Clearwater, FL 33765-1526

Jennifer Kaesberg
6316 Ashwell Drive
St. Louis MO 63123-1501

Jennifer Schmitt
165 Ulmer Drive
Lino Lakes MN 55014-1207

Jewelry in Candles
7755 Sunny Dale Court
Fort Worth, TX 76137-5461

Kaysha Weiner Photography
1856 Pomona Avenue, Unit 2B
Costa Mesa, CA 92627-9510

Mary Kay
5354 Canvasback Rd
Baines, WA 98230-6302

Melissa List
6729 Wynfield Terrace Drive
St Louis, MO 63129-3973

Origami Owl
7070 Berrywood Lane
Jacksonville, FL 32277-2607

Pure Romance
5232 S. Grand Blvd
St. Louis, MO 63111-1615

Renee Contreras
6507 N 86 Pl
Scottsdale, AZ 85250-5730

Robert Yutzy
17005 Gaines Road
Broad Run VA 20137-2248

Simply Perfect Java
1030 Pine Branch Drive
Weston, FL 33326-2841

Southern Elegance Events
2011 Wrangler Dr
Brandon, FL 33511-2112

Studio D Photography
2604 America Eva.
Jacksonville, FL 32250-8519

Thunderkiss Entertainment
203 Long Ln
York Haven, PA 17370-9747

Tupperware
96093 Barnwell Cir
Fernandina Beach, FL 32034-1658

Ward Group PR, Inc.
2962 Trustee Avenue
Sarasota FL 34243-2549

End of Label Matrix
Mailable recipients    26
Bypassed recipients     0
Total                  26

# Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)
www.flmb.uscourts.gov

In re:                                                          CASE NO. 8:15-BK-10966-MGW

THE HEALTH SUPPORT NETWORK,                    CHAPTER 7
INC.,

      Debtor.

_____/

In re:                                                          CASE NO. 8:15-BK-10969-MGW

                                                                    CHAPTER 7
BRIDES AGAINST BREAST CANCER,
LLC,

      Debtor.

_____/

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (hereinafter the "Settlement Agreement") is made effective as of this 14th day of May 2019 (the "Effective Date"), and is entered into by and between: (i) BETH ANN SCHARRER,  Chapter 7 (the "Trustee") of and for the bankruptcy estates of the above-captioned Debtors (collectively, the "Debtors" or "HSN"); and (ii) KERKERING, BARBERIO & CO. ("Kerkering") (the Trustee and Kerkering are sometimes collectively referred to herein as the "Parties" or individually referred to as "Party").

WHEREAS, On October 30, 2015 (the "Petition Date"), the Debtors filed voluntary Chapter 7 petitions under Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court");

WHEREAS, the Trustee is the duly appointed and acting fiduciary of the bankruptcy estates of the Debtors, with the sole and full power, authority, and standing to prosecute, compromise, or otherwise resolve, among other things, all claims against Kerkering for and on

behalf of estates of the Debtors;

WHEREAS, the Trustee and her counsel independently conducted an investigation into, *inter alia*, potential claims against Kerkering involving alleged professional negligence (the "Kerkering Claims") and the avoidance and recovery of certain alleged avoidable transfers against Kerkering (the "Chapter 5 Claims");

WHEREAS, Kerkering denied any and all liability regarding the Kerkering Claims and the Chapter 5 Claims;

WHERAS, the Parties agreed, and the Bankruptcy Court ordered the Parties, to mediate the Kerkering Claims and Chapter 5 Claims in Tampa, Florida.

WHEREAS, on November 28, 2018, the Trustee and Kerkering participated in the mediation conference in connection with the Kerkering Claims and the Chapter 5 Claims (the "Mediation"), and continued settlement discussions in connection with and as part of the Mediation thereafter;

WHEREAS, the Trustee and Kerkering reached a settlement relating to the Kerkering Claims, the Chapter 5 Claims, and any and all other claims the Trustee has authority to pursue against Kerkering, with such settlement being subject to Bankruptcy Court approval pursuant to Federal Rule of Bankruptcy Procedure 9019 ("FRBP 9019");

WHEREAS, as a result of the efforts of the Parties prior to, during, and subsequent to the Mediation, the Trustee (on behalf of the estates), and Kerkering, without Kerkering admitting any fault or liability whatsoever to the Trustee, and to avoid the potential costs and uncertainties attendant to litigation, desire to settle amicably the Kerkering Claims, the Chapter 5 Claims, and all other possible claims against Kerkering that could have been brought by the estates; and

WHEREAS, the Parties wish to set forth the terms of their settlement in this Settlement Agreement.

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties stipulate and agree as follows:

1.      Recitals Incorporated. The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Settlement Agreement.

2.      Settlement Payment.  As full and final settlement of the Kerkering Claims, the Chapter 5 Claims, and any and all other claims that could have been brought by the estates, the total sum of One Hundred Ninety Five Thousand and 00/100 Dollars) ($195,000.00 US) (the "Settlement Payment") shall be paid by Kerkering. The Settlement Payment shall be due in a lump sum within thirty (30) days from the date of the entry of a Final Settlement Order (as the term is defined below). Kerkering shall make the Settlement Payment in the form of a check for good and collectable funds made payable to "Beth Ann Scharrer, Trustee of the Health Support Network Bankruptcy Estate", which check shall be tendered to the Trustee's counsel, Dave Jennis, Esq. Jennis Law Firm, 606 East Madison Street, Tampa, FL 33602 via Federal Express or via wire transfer based on written instructions as directed by the Trustee.

3.      Waiver of Claims.  In exchange for the full and final settlement and effective upon entry of the Final Settlement Order (as the term is defined below), Kerkering shall be deemed to waive any and all claims it has or may have against the bankruptcy estates, the Debtors, and the Trustee.

4.      No Admissions.  Entry into this Settlement Agreement and the settlement of the Kerkering Claims and Chapter 5 Claims shall not be deemed an admission of any liability

or acknowledgement of a breach of any professional standard by any party hereto. In fact, any liability is strictly denied by the parties, who have entered into this settlement based upon economic and other considerations.

5.    <u>Bankruptcy Court Approval and Final Settlement Order</u>. This Settlement Agreement is subject to and conditioned upon the entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement, with the Bankruptcy Court reserving jurisdiction regarding the interpretation, effectuation, and enforcement of the terms of this Settlement Agreement (the "Final Settlement Order"). The Trustee shall file a motion in the Bankruptcy Court seeking the approval of this Settlement Agreement (the "Settlement Motion"). The Parties and their counsel shall use their best efforts to cause the Bankruptcy Court to approve this Settlement Agreement and to effectuate the settlement of the stated terms and conditions set forth herein.

6.    <u>Prior Agreed Standstill and Tolling Agreement Deadline Extended</u>: By the execution of this Settlement Agreement, the Parties agree that current deadline for the Trustee to file claims under those certain initial and amended Standstill and Tolling Agreements previously entered into between the Parties, which tolling currently expires on or about May 31, 2019, is hereby extended until the later of: (i) 90 days from the Effective Date of this Settlement Agreement; (ii) or 30 days after the entry of an order on the Settlement Motion, so as to allow sufficient time for the Trustee to obtain Bankruptcy Court approval.

7.    <u>Frustration of Purpose</u>. None of the Parties shall take any action to intentionally frustrate the purpose of this Settlement Agreement.

8.    <u>Non-Approval</u>. In the event the Settlement Agreement is not approved by the Bankruptcy Court, nothing herein shall be deemed a representation or admission by any Party

as to any issue, and this Settlement Agreement shall be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Parties shall be returned to the status quo each Party held prior to entry into this Settlement Agreement.  Moreover, the parties hereby agree that the fact that any Settlement or Settlement Agreement was negotiated and entered into by and between the Parties shall not be admissible in any future proceeding in the event that this Settlement Agreement is not approved by the Bankruptcy Court.

9.    <u>Releases and Waivers</u>. Effective upon entry of the Final Settlement Order and confirmation of receipt and bank clearance of the Settlement Payment, the Trustee (on behalf of the Debtors and the Debtors' bankruptcy estates), and Kerkering, hereby remise, release, and forever discharge one another of and from any and all claims, sanctions, extra contractual claims, damages, demands, suits, debts, actions or causes of action of any kind relating to the Debtors, the Debtors' bankruptcy estates, the Main Bankruptcy Case, the Kerkering Claims, or the Chapter 5 Claims, including, without limitation, claims sounding in contract, tort, violations of any federal or state statute or regulation, contribution, and/or indemnity, whether at law or in equity, direct or derivative, known or unknown, or suspected or unsuspected, that the Trustee (on behalf of the Debtors and the Debtors' bankruptcy estates), Kerkering ever had or may now or hereafter own, hold, have or claim to have in the future by reason of any matter, cause or thing whatsoever from the beginning of the world to the entry of the Final Settlement Order and confirmation of receipt and bank clearance of the Settlement Payment, whether such claim was made or could have been made by any of the Parties, provided, however, that nothing herein shall operate or be construed to operate as a release or discharge of any of the obligations under this Settlement Agreement.  For the avoidance of doubt, this Settlement Agreement is without prejudice to

and nothing herein shall operate or be construed to operate as a compromise, impairment, release, waiver, or as having any effect whatsoever on any and all claims which have been or may be asserted by the Trustee against any third parties that are not Kerkering.

10.   <u>Attorneys' Fees and Costs</u>.  The Parties shall each bear their own attorneys' fees and costs incurred in regard to all matters arising out of or relating to this Settlement Agreement, obtaining a Final Settlement Order approving the Settlement Agreement, the Main Bankruptcy Case, the Kerkering Claims, and the Chapter 5 Claims.

11.   <u>Notices</u>. All notices to be sent or information to be provided under this Settlement Agreement shall be sent to the following via email and U.S. Mail:

a.   <u>For the Trustee</u>:

Dave Jennis, Esq.
JENNIS LAW FIRM
606 East Madison Street
Tampa, FL 33602
Tel. 813-229-2800
Email: DJennis@JennisLaw.com
*Counsel for the Trustee*

-and-

David C. Cimo, Esq.
Marilee A. Mark, Esq.
CIMO MAZER MARK PLLC.
100 S.E. Second Street, Suite 3650
Miami, FL 33131
Email: dcimo@cmmlawgroup.com
Email: mmark@cmmlawgroup.com
*Special Litigation Counsel for the Trustee*

b.   <u>For Kerkering</u>:

Gary R. Shendell, Esq.
Matt Torincasa, Esq.
SHENDELL & POLLOCK, P.L.
Tel: 561-241-2323
Email: gary@shendellpollock.com

Email: matt@shendellpollock.com
*Counsel for Kerkering*

12.    <u>Binding Effect</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their officers, directors, shareholders, employees, partners, attorneys, professionals, affiliates, insurers, reinsurers, representatives, spouses, trustees, heirs, successors, and assigns.

13.    <u>Entire Agreement</u>.  This Settlement Agreement constitutes the only existing and binding agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Settlement Agreement, unless expressly set forth herein.  This Settlement Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

14.    <u>Governing Law/Forum Selection</u>. The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Settlement Agreement and the Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose.  This Settlement Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles, except that the releases provisions of the Settlement Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida

15.    <u>Acknowledgment of Terms</u>.  The Parties have read and understand the terms of this Settlement Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term.  No Party is relying on information provided by or from any other Party in entering this Settlement Agreement and there are no duties of disclosure by any Party to any other Party.  This Settlement Agreement

was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Settlement Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Settlement Agreement.

16.    <u>Advice of Counsel</u>.  The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement, have read this Settlement Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same.  The Parties have had the Settlement Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Settlement Agreement and its nature and effect.  The Parties further represent that they are entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

17.    <u>Severability</u>.  If any term of this Settlement Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Settlement Agreement.

18.    <u>Neutral Interpretation</u>.  In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

19.    <u>Execution of Documents</u>.  This Settlement Agreement may be executed in

counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Settlement Agreement.  The Parties may execute this Settlement Agreement and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

20.    <u>Time is of the Essence</u>.  The Parties acknowledge and understand that time is of the essence in the performance of their respective duties and obligations hereunder.

21.    <u>Divisions and Headings</u>.  The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement, as follows:

BETH ANN SCHARRER, Chapter 7 Trustee

DATED: 5-17-19   By: Beth Ann Scharrer (print name)
Chapter 7 Trustee (print title)

KERKERING, BARBERIO & CO.

DATED: 5-22-19   By: Robert J. Lane (print name)
President (print title)

Page 10 of 10